## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ADRIAN L. ORR,

                Petitioner,

v.

KURT JONES,

                Respondent.

_____/

Case Number: 00-75572

HONORABLE AVERN COHN

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Adrian L. Orr (Petitioner) is a state inmate at the Saginaw Correctional Facility in Freeland, Michigan serving a life sentence without the possibility of parole. Petitioner filed a *pro se* petition for a writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Attorney General's office, filed a response, arguing that Petitioner's claims are procedurally defaulted and/or lack merit. For the reasons which follow, the petition will be denied.

### II. Procedural History

Following a jury trial in the Recorder's Court for the City of Detroit, Petitioner was convicted of first-degree murder, two counts of assault with intent to commit murder, and possession of a firearm during the commission of a felony. On April 10, 1997, Petitioner was sentenced to life imprisonment without parole for the first-degree murder conviction, life imprisonment for each of the assault with intent to commit murder convictions, and two-years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.    The cumulative effect of the prosecutor's misconduct demands reversal.

    A.  The prosecutor prejudicially impeached a defense witness with prior convictions of carjacking, armed robbery and felony firearm; and improperly elicited the duration and details of the witness' sentences and that he was "involved in a shootout" three days after Patton's death.

    B.  The prosecutor improperly elicited that although witness Jackson knew for months that another person confessed to killing Patton, he did not go to the police.

II.    The court erroneously precluded counsel from conducting recross-examination of a witness after allowing the prosecutor to conduct redirect.

III.    The court erroneously precluded defendant from showing that he was being harassed by the complainants, which would have provided the jury with circumstantial evidence as to defendant's state of mind.

IV.    The court clearly erred in finding defendant's confession was validly obtained, and defendant is entitled to a new trial.

V.    Erroneous and conflicting instructions denied defendant a fair trial.

    A.  The court plainly erred in giving an insufficient reasonable-doubt instruction, because it diluted the People's burden of proof and denied defendant a fair trial.

    B.  The court erroneously instructed on transferred intent over defense objection.

    C.  The court erroneously failed to properly instruct that aiding and abetting first-degree murder requires that at the time the act was done, defendant had the same specific

2

intent and deliberation that the principal possessed.

D.  The first-degree murder instruction was erroneous because it failed to inform the jury of the essential requirement that the killing cannot be the result of a sudden impulse without thought or reflection.

E.  The instructions on first- and second-degree murder erroneously failed to include the essential element that the killing be done without justification or excuse.

F.  The self-defense instructions confused the jury by telling them they should evaluate the reasonableness of defendant's conduct by how the circumstances appeared to him, but also how the circumstances appeared to the jury.

G.  The court shifted the burden of proof by telling the jury that for self-defense to be available, "It must appear that the defendant was without fault."

H.  The court erred in refusing to instruct on the cognate lesser offense of voluntary manslaughter on the theory of "imperfect self-defense"

I.  The court erred in refusing to instruct on the cognate lesser offenses of common-law involuntary manslaughter, statutory manslaughter, reckless discharge and negligent discharge of a firearm.

J.  The court erred in refusing to instruct on accident as being contrary to the facts and defendant's theory.

K.  The court erred in giving written instructions to the jury only on the crimes of first- and second-degree murder.

L.  The court's aiding-and-abetting instruction erroneously told the jury they could convict of first-degree murder if defendant acted in concert with others with the intent "to do a shooting."

M.  The instructions on assault with intent to commit murder failed to inform the jury of the essential element that the assault must have been without legal excuse or

3

justification.

N.  The instruction on assault with intent to commit great bodily harm less than murder was inadequate because it treated "great bodily harm" as self-explanatory.

O.  The felonious assault instruction erroneously informed the jury that the crime could only exist if a gun was not fired.

VI.     The evidence was legally insufficient to support the charge of first-degree murder because the doctrine of transferred intent does not apply.

VII.    Defendant was deprived of the effective assistance of counsel.

VIII.   The cumulative effect of the errors justifies a new trial.

IX.     The sentence of mandatory life is a "determinate sentence" which the legislature has no power to impose under Const. 1963, Art. 4, § 45.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences.  People v. Orr, No. 203766 (Mich. Ct. App. Apr. 23, 1999).

Petitioner then filed a delayed application for leave to appeal to the Michigan Supreme Court, presenting the same claims presented on direct review to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal.  People v. Orr, No. 114716, 461 Mich. 939 (1999).

Thereafter, Petitioner filed the pending petition for a writ of habeas corpus presenting the same claims presented on direct review, with the exception that he does not raise the sentencing claim or the claim that he was improperly prevented from presenting evidence that the complainants were harassing him.

4

### III. Facts

The material facts leading to Petitioner's conviction as gleaned from the record follow:

Petitioner's conviction arises out of the shooting death of Alice Patton on August 1, 1996.

Wallace Toran Sims testified that, at approximately 1:00 p.m. on that date, he and Alice Patton

were walking on Hawthorn Street in the City of Detroit, when two men, wearing masks and

wielding guns, came out of an alley and began shooting in Sims' direction.  Sims, Ms. Patton,

and Noah Shelton, who was standing nearby, began running.  Sims testified that he was not

struck by a bullet, but Ms. Patton and Mr. Shelton were.  Sims denied that there had ever been

any problems between Petitioner and him.  He also denied that anyone other than the two masked

gunmen fired any shots.

Noah Shelton testified that on August 1, 1996, he was walking up Hawthorn Street when

he heard gunshots.  He turned around and saw two masked men with assault rifles firing at him.

He fled up the street, but was struck in the leg and finger with bullets.

Police Officer Harold Mitchell testified that, on August 15, 1996, after advising Petitioner

of his rights, he took a statement from Petitioner.  Officer Mitchell testified that, in the statement,

Petitioner stated that, on July 30, 1996, he and "Junior," later identified as Stanley Cook, were on

Petitioner's front porch when Petitioner observed Wallace Sims, Noah Shelton, and four or five

other men, all of whom were carrying bats, approaching Petitioner's house.  Petitioner stated that

Sims was also carrying a gun.  Sims accused Petitioner of stealing a sackful of drugs.  Sims and

the other men apparently remained at Petitioner's house for sometime, drinking and continuing to

threaten Petitioner with baseball bats.  Petitioner stated that his girlfriend called the police.  By

the time police arrived Sims and the other men were gone.  Petitioner and his girlfriend then

5

when to Petitioner's mother's house.  While at his mother's house, Petitioner stated that he received a telephone call informing him that Sims, Shelton and some other people were taking furniture out of his house.

In his statement to Officer Mitchell, Petitioner further stated that, on August 1, 1996, his stepbrother Richard Coles told Petitioner that he would go with him to retrieve some clothes and furniture from his house.  Coles told Petitioner that they should not go there unarmed, so they each took a gun.  On their way to Petitioner's house, Coles and Petitioner picked up co-defendant Wilbert Grizzard.  Once on Hawthorn Street, Petitioner spotted Sims and told Coles to let Petitioner and Grizzard out of the car.  Petitioner stated that they got out of the car with their guns with the intention just to get Petitioner's clothes and furniture.  He stated that he saw Shelton reach for a gun, so he fired his gun three times in that direction.  Petitioner stated that Grizzard then started firing at Sims, who Petitioner said was firing a rifle at them.  Petitioner stated that the victim, Ms. Patton, was standing near Sims, so he presumed Grizzard had shot Ms. Patton.

Petitioner testified in his own defense.  His testimony was consistent with the statement he had given to police.  Petitioner testified that, when they returned to Hawthorn Street on August 1, 1996, he and Grizzard both carried guns because Petitioner was scared of Sims and Shelton.  Petitioner testified that, as he and Grizzard were walking down Hawthorn Street, Petitioner saw Shelton come out of an alley, turn, and point what Petitioner thought was a gun at him.  Petitioner testified that he fired three shots, from his semi-automatic rifle,  in Shelton's direction.  Petitioner then began running away.  He stated that as he was running he heard shooting.  Petitioner testified that Grizzard told him that Sims was up the street from Shelton and

6

that Sims was shooting at Grizzard.  Petitioner testified that Grizzard shot back in Sims'

direction.  Petitioner testified that he never fired his gun in the direction of Sims.

## IV. <u>Analysis</u>

### A. <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110

Stat. 1214, 28 U.S.C. § 2241, <u>et seq</u>. ("AEDPA") sets forth the standard of review a federal court

must apply when reviewing applications for a writ of habeas corpus that were filed after the

effective date of the act, April 24, 1996.  Because petitioner's application was filed after April

24, 1996, the provisions of the AEDPA apply.

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must

utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim –
>
> (1)    resulted in a decision that was contrary to, or
>        involved an unreasonable application of, clearly
>        established Federal law, as determined by the
>        Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an
>        unreasonable determination of the facts in light of
>        the evidence presented in the State court
>        proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  <u>Franklin v. Francis</u>, 144 F.3d 429 (6th Cir. 1998).

7

Additionally, this Court must presume the correctness of state court factual determinations. 28

U.S.C. § 2254(e)(1)[1]; *see also* <u>Cremeans v. Chapleau</u>, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary

to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme
> Court's] clearly established precedent if the state court applies a
> rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that
> are materially indistinguishable from a decision of this Court and
> nevertheless arrives at a result different from [the Court's]
> precedent.

<u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1519-20 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States

Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the

"unreasonable application" clause when "a state-court decision unreasonably applies the law of

this Court to the facts of a prisoner's case." <u>Id.</u> at 1521. The Court defined "unreasonable

application" as follows:

> [A] federal habeas court making the "unreasonable application"
> inquiry should ask whether the state court's application of clearly
> established federal law was objectively unreasonable. . .

---

[1]     28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

8

> [A]n unreasonable application of federal law is different from an
> incorrect application of federal law. . . . Under § 2254(d)(1)'s
> "unreasonable application" clause, then, a federal habeas court may
> not issue the writ simply because that court concludes in its
> independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly.  Rather,
> that application must also be unreasonable.

Id. at 1521-22.

## B.  **Procedural Default**

Respondent asserts that certain of Petitioner's claims are barred from review in this Court

because they are procedurally defaulted.  In particular, Respondent argues that Petitioner's claims

of prosecutorial misconduct and the claims regarding jury instructions, identified above as V. A,

B, F, H, I, K & L, are procedurally defaulted.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal
> claims in state court pursuant to an independent and adequate state
> procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default, and
> actual prejudice as a result of the alleged violation of federal law,
> or demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner

files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state

appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or

if he fails to comply with a state procedural rule that required him to have done something at trial

to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or

file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982);

Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice

test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." Simpson, 94 F.3d at 202.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. Rust, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by

looking to the last reasoned state court judgment denying Petitioner's claims. *See* Coleman, 501 U.S. at 729-30. With respect to Petitioner's claims of prosecutorial misconduct, the Michigan Court of Appeals held that the issues were not preserved for review because Petitioner did not object to the alleged prosecutorial misconduct at trial. Similarly, with respect to the select claims of improper jury instructions, the Michigan Court of Appeals held that those claims were subject to review only for manifest injustice because Petitioner failed to object to them at trial. The state court's reliance on Petitioner's failure to object to the jury instructions and alleged prosecutorial misconduct at trial was an adequate and independent state ground on which to decline to review Petitioner's claim. *See* Engle v. Isaac, 456 U.S. 107, 110 (1982). Thus, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner asserts a claim of ineffective assistance of counsel as cause for his failure to present these claims on direct review. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot fairly be attributable to him." Coleman, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." Id. at 753-54 (internal citations omitted). As discussed in more detail *infra*, the United States Supreme Court set forth the standard applicable to ineffective assistance of counsel

11

claims in <u>Srickland v. Washington</u>, 466 U.S. 668 (1984).  In order to establish ineffective

assistance of counsel, a petitioner must show that his attorney's performance was deficient and

that that deficiency prejudiced petitioner.  <u>Id.</u> at 687.

 With respect to Petitioner's claims of prosecutorial misconduct, Petitioner claims that the

prosecutor erred in eliciting testimony from defense witness Christopher Jackson that he had

been involved in a shootout three days after Ms. Patton's death.  In addition, Petitioner claims

that the prosecutor committed misconduct in questioning Mr. Jackson as to why he did not earlier

report to police his testimony that Shelton had confessed to shooting Patton.  First, even

assuming that trial counsel erred in failing to object to admission of testimony regarding Mr.

Jackson's involvement in a shootout three days after Ms. Patton's death, given the relative

unimportance of Mr. Jackson's testimony to Petitioner's defense, Petitioner cannot establish that

admission of that testimony prejudiced him in any way.  Second, under Michigan law, a

prosecutor may cross-examine a defense witness as to why the witness did not approach police

sooner regarding potentially exculpatory information.  <u>People v. Gray</u>, __ N.W.2d __, 2002 WL

700942, *2-3 (Mich. April 24, 2002); <u>People v. Phillips</u>, 552 N.W.2d 487, 493 (Mich. Ct. App.

1996).  Therefore, trial counsel was not ineffective for failing to object to proper questioning.

 Next, Petitioner claims that his trial counsel was ineffective in failing to object to the

following jury instructions: (1) reasonable doubt, (2) transferred intent, (3) aiding and abetting,

(4) self-defense, (5) assault with intent to commit great bodily harm less than murder, and (6) the

trial court's failure to specify that first- and second-degree murder, and assault with intent to

commit murder require that the killing or assault be done without justification or excuse.  With

respect to each of the instructions, the Michigan Court of Appeals held that Petitioner did not

12

preserve the issue because he failed to object to the instructions at trial. However, the state court proceeded to consider each of these instructions in turn and held that each instruction was appropriate and did not misstate Michigan law. Petitioner has failed to show that the state court's determination that the jury instructions were proper was incorrect. Thus, Petitioner has failed to show that the jury instructions were improper. Accordingly, Petitioner's attorney was not ineffective in failing to object to the instructions. Petitioner thus has failed to establish cause for his procedural default.

Because Petitioner has failed to establish that his attorney rendered ineffective assistance of counsel, he has failed to show cause for her procedural default. His claims are therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." Id. at 327. The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence.
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the

13

> standard requires the district court to make a probabilistic
> determination about what reasonable, properly instructed jurors
> would do. Thus, a petitioner does not meet the threshold
> requirement unless he persuades the district court that, in light of
> the new evidence, no juror, acting reasonably, would have voted to
> find him guilty beyond a reasonable doubt.

Id. (internal quotation omitted).

Applying the Schlup standard of actual innocence to Petitioner's case, Petitioner has not

persuaded this Court that no juror, acting reasonably, would have found him guilty beyond a

reasonable doubt.

## C. Jury Instructions

Petitioner claims that he is entitled to habeas corpus relief because the trial court gave

erroneous and conflicting jury instructions with respect to the aiding and abetting, first-degree

murder, self-defense, and felonious assault instructions. In addition, Petitioner claims the trial

court erred in giving written instructions to the jury only on the crimes of first- and second-

degree murder.

An erroneous jury instruction warrants habeas corpus relief only where the instruction

"'so infected the entire trial that the resulting conviction violates due process.'" Estelle v.

McGuire, 502 U.S. 62, 72 (1991) *(quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973)). "[I]t

must be established not merely that the instruction is undesirable, erroneous, or even 'universally

condemned', but that it violated some [constitutional] right'". Donnelly v. DeChristoforo, 416

U.S. 637, 643 (1974). Further, "[i]t is well established that the instruction 'may not be judged in

artificial isolation,' but must be considered in the context of the instructions as a whole and the

trial record." Estelle v. McGuire, 502 U.S. 62, 72 (1991) *(quoting* Cupp v. Naughten, 414 U.S.

14

141, 147 (1973)).

First, Petitioner claims that the aiding and abetting instruction was erroneous because it permitted the jury to convict Petitioner of first-degree murder if Petitioner acted in concert with others with the intent to do a shooting. The Michigan Court of Appeals held that the trial court's instruction, viewed in its entirety was not erroneous. The state court held, in pertinent part:

> Defendant Orr argues that the aiding and abetting instruction failed to inform the jury that an aider and abettor must intend to commit the offense or know that the others involved intended to commit the offense. Defendant Orr properly argues that, to establish the intent requirement for aiding and abetting, the prosecution must show that the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time defendant gave the aid or assistance. . . . . However, after reviewing the trial court's instructions regarding first-degree murder and aiding and abetting, including the examples given by the court with respect to acting in concert and the court's instruction that the jury could infer the intent to kill from the use of a gun, we conclude that the instructions fairly presented the issues to be tried with respect to Orr's culpability as an aider and abettor. Orr's theory of the case was that he and Grizzard shot at Shelton and Sims, respectively, in self-defense and, because Patton was standing near Sims, it must have been Grizzard that shot Patton. The prosecutor's theory was that Orr and Grizzard were acting in concert and had a common plan to do a shooting. Therefore, the jury was called upon to decide whether Orr and Grizzard were acting in concert to do a shooting or were justified in shooting in self-defense. Under either version of the case, the intent to kill was never in dispute. . . . Under these circumstances, we cannot conclude that the trial court's aiding and abetting instruction resulted in manifest injustice.

People v. Orr, slip op. at 6.

Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent or that the jury instruction regarding aiding and abetting, taken in context, violated his right to due process.

Next, Petitioner claims that the instruction regarding first-degree murder was insufficient because the trial court did not specifically inform the jury that a killing was not first-degree murder if it was the result of a sudden impulse, without thought or reflection. The Michigan Court of Appeals held that, "[w]hile the court did not specifically inform the jury that the killing could not be the result of a sudden impulse, the jury was instructed that the killing must have been premeditated." People v. Orr, slip op. at 6. The state court, therefore, found no error in the instruction. Having reviewed the jury instructions, this Court determines that the jury was adequately advised as to the premeditation element of first-degree murder. Therefore, the trial court's failure to specifically state that the killing could not be the result of a sudden impulse did not deprive Petitioner of his right to due process.

Third, Petitioner claims that the trial court's self-defense instruction was inadequate. Petitioner argues that the trial court erred in this regard because the court informed the jury that it should determine the reasonableness of Petitioner's response according to how the circumstances appeared to the jury and how they appeared to Petitioner. The trial court instructed the jury, in pertinent part:

> . . . If a person acts in lawful self-defense, his actions are excused and he is not guilty of any crime. . . .
>
> First, the defendant must have honestly and reasonably believed that he was in danger of being killed, even if it turned out he was wrong about how much danger he was in. A person may not kill or seriously injury another person just to protect themselves against what seems like a threat of only minor injuries. The defendant must have been afraid of death, serious physical injury.
>
> When you decide if the defendant was afraid of one or more of these, you should consider all the circumstances, the condition of the people involved, their relative strength, whether the person was

16

> armed with a dangerous weapon or had some other means of
> injuring the defendant, the nature of the other person's attack or
> threat if any, whether the defendant knew about any previous
> violent acts or threats made by the other person. That at the time
> the defendant must have honestly and reasonably believed this was
> immediately necessary.

After deliberating for a couple of hours, the jury sent a note to the judge requesting that

he explain "the words reason and reasonable" again. The trial judge reinstructed the jury, in

large part, as to the meaning of reasonable doubt and a jury's use of reason in reaching a verdict.

Petitioner objects to the following portion of the trial court's reinstruction:

> There are things that are not reasonable that don't make sense to
> you. Something that is reasonable, when I say reasonable,
> something you can assign a reason for having. Does it make sense
> to you. That's reasonable . . .

> People have to act rationally and reasonably . . . You have to look
> at the evidence and decide does this appear reasonable to me? Did
> it appear honest and reasonable to the defendant? That's what you
> have to consider. Did certain actions appear reasonable, and based
> on the evidence you make that decision, are things reasonable. Do
> they appear reasonable?

Most of the trial court's reinstruction addressed the meaning of reasonable in terms of

reasonable doubt. In addition, the trial court did not mention self-defense when giving the

reinstruction. Thus, while the small excerpt of the jury instruction selected by Petitioner might,

at first blush, appear a bit confusing, when considered in the context of the entire jury

instructions, the self-defense instruction, did not deprive Petitioner of his right to due process.

Fourth, Petitioner claims that the trial court's instruction regarding felonious assault was

erroneous because the trial court instructed the jury that felonious assault could only occur if no

shots were fired from the gun. The Michigan Court of Appeals agreed that the instruction was

17

erroneous. However, the state court held that the error was harmless because the jury was also

instructed regarding the higher offense of assault with intent to commit murder, and the

intermediate offense of assault with intent to do great bodily harm less than murder, and the jury

found Petitioner guilty of the higher offense. This Court agrees with the state court's assessment

that the jury's reluctance to convict on the offense of assault with intent to commit murder

rendered the erroneous felonious assault instruction harmless error. *See* Todd v. Stegall, 2000

WL 654960 *11 (E. D. Mich. Apr. 24, 2000). Therefore, the erroneous felonious assault

instruction did not so infect the entire trial as to deprive Petitioner of his right to due process. In

addition, the state court's finding that the error was harmless was not an unreasonable application

of the harmless error doctrine.

Finally, Petitioner argues that the trial court erred in giving the jury a partial set of written

instructions. The trial court gave the jury a copy of the written instructions with respect to first-

and second-degree murder.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court

of Appeals, held, in pertinent part:

> A trial court may provide the jury with a partial set of written
> instructions "if the parties agree that a partial set may be provided
> and agree on the portions to be provided." MCR 6.414(G). Here,
> defense counsel initially requested that the court give the jury "all
> the law," arguing that giving the jury only the first-degree murder
> and second-degree murder instructions emphasized those charges.
> When the court then asked defense counsel whether he wanted the
> jury to have a full set of written instruction, he responded that he
> wanted the jury to have written instructions regarding defendant's
> theory of the case. The trial court denied defendant's request.
> However, the only oral instructions given in conjunction with
> count one were first-degree murder and second-degree murder and
> the verdict form gave the jury a choice of finding defendant Orr not

18

> guilty.  Furthermore, the oral instructions regarding defendant's
> theory of the case adequately presented those issues to the jury.
> Under these circumstances, we find no error requiring reversal.

People v. Orr, slip op. at 8.

It may have been more prudent for the trial court to provide the jury with a full, rather than partial, set of written instructions.  However, the Michigan Court of Appeals found the oral instructions to be complete and accurate.  And, Petitioner has not shown that conclusion to be contrary to or an unreasonable application of Supreme Court precedent.  Therefore, the Court concludes that giving the jury partial written instructions did not deprive Petitioner of his right to due process.

### D.  Voluntariness of Petitioner's Confession

Petitioner claims that he is entitled to habeas corpus relief because the trial court erred in finding that his confession was voluntarily made.

A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question."  McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988), cert. denied, 490 U.S. 1020 (1989).  When determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution."  Miller, 474 U.S. at 112.  All of the factors surrounding the confession should be scrutinized closely.  Culombe v. Connecticut, 367 U.S. 568 (1981).  However, without coercive police activity, a confession should not be found to be involuntary.  Colorado v. Connelly, 479 U.S. 157, 167 (1986) (holding that "coercive

police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

The trial court conducted an evidentiary hearing regarding Petitioner's motion to suppress at which Petitioner and Police Officers Harold Mitchell and Herlotha Fields testified. Petitioner testified that he repeatedly invoked his right to an attorney, but that Officers Fields and Mitchell failed to stop questioning him. Officer Fields testified that she spoke to Petitioner on August 14, 1996, and advised him of his Miranda rights. Petitioner did not invoke his right to counsel, but Officer Fields was unable to pursue her interrogation of Petitioner because she was conducting a number of other interrogations and investigations at the time. Officer Mitchell testified that he interrogated Petitioner on August 15, 1996. Prior to interrogating Petitioner, Officer Mitchell advised Petitioner of his rights. Officer Mitchell testified that Petitioner never invoked his right to counsel. At the conclusion of the evidentiary hearing, the trial court held that Petitioner's statement to police was admissible.

In his appeal of right to the Michigan Court of Appeals, Petitioner argued that the trial court erred in denying his motion to suppress. The Michigan Court of Appeals held, in pertinent part:

> Defendant Orr argues that "[t]he trial court's decision on voluntariness was clearly erroneous because the central premise on which it rests – defendant's supposed willingness to talk on August 14, 1996 – is manifestly a police fabrication." However, this Court must give deference to the trial court's unique opportunity to observe the witnesses and its superior ability to judge their credibility. . . . Here, defendant Orr's testimony conflicted with that of Officers Fields and Mitchell regarding the circumstances surrounding defendant Orr's statement to the police. After reviewing the record, we cannot conclude that the trial court clearly erred in believing the testimony of Officers Fields and Mitchell

20

over that of defendant Orr.  Thus, we find no clear error in the trial
court's determination that defendant Orr's statement was
voluntary.

People v. Orr, slip op. at 5.

Petitioner has failed to show that the Michigan Court of Appeals' decision that his

statement was voluntary was contrary to or an unreasonable application of Supreme Court

precedent.  At the evidentiary hearing, the questioning officer testified that he advised Petitioner

of his rights prior to questioning him and that Petitioner did not invoke his right to counsel.

Petitioner testified that he did invoke his right to counsel.  The trial court resolved the issue of

credibility on this disputed factual issue in favor of the police officer.  The "assessment of the

credibility of witnesses is generally beyond the scope of review" for a federal court on habeas

review.  Schlup v. Delo, 513 U.S. 298, 330 (1995).

Moreover, "a federal habeas corpus court faced with a record of historical facts that

supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts

in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 325.

Therefore, this Court must defer to the state court's determination regarding the credibility of the

police officers' testimony that Petitioner did not invoke his right to counsel.

Accordingly, Petitioner is not entitled to habeas corpus relief with respect to this claim.

### E.  Sufficiency of the Evidence

Petitioner next claims that he is entitled to habeas corpus relief because insufficient

evidence was presented to support a conviction for first-degree murder.  Petitioner claims that,

under Michigan law, the doctrine of transferred intent does not apply to first-degree murder.

Petitioner argues that, consequently, the prosecution presented insufficient evidence of the intent

element of first-degree murder.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the Jackson standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The Michigan Court of Appeals held that the doctrine of transferred intent is applicable to first-degree murder. Thus, the Michigan Court of Appeals held that, although Petitioner may not have had the intent to kill Ms. Patton, the evidence supported the finding of transferred intent. Evidence was presented at trial that Petitioner and Grizzard brought two guns to Hawthorn Street and began firing at Mr. Shelton and Mr. Simms. Mr. Shelton was struck in the right index finger and leg. Ms. Patton, who was standing beside Mr. Simms, was shot and killed. Thus, viewing the evidence in a light most favorable to the prosecution, a reasonable juror could have concluded that the element of intent was satisfied beyond a reasonable doubt.

Thus, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to establish that first-degree murder did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the

22

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### F. Alleged Ineffective Assistance of Counsel

Petitioner claims that he is entitled to habeas corpus relief on the ground that he was denied the effective assistance of counsel in numerous respects. Specifically, Petitioner claims that his trial counsel: (1) failed to request proper jury instructions; (2) failed to move to suppress his statement to police on Fourth and Fifth Amendment grounds; (3) failed to effectively cross-examine Officer Fields' regarding her credibility; (4) failed to elicit evidence that the complainants were also firing weapons; (5) failed to elicit testimony regarding a third gun; and (6) failed to present evidence that, immediately after being shot, the victim made a statement identifying someone other than Petitioner as being the gunman.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-guess
> counsel's assistance after conviction or adverse sentence, and it is

23

> all too easy for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act or omission
> of counsel was unreasonable. . . . A fair assessment of attorney
> performance requires that every effort be made to eliminate the
> distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from
> counsel's perspective at the time. Because of the difficulties
> inherent in making the evaluation, a court must indulge a strong
> presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the defendant must
> overcome the presumption that, under the circumstances, the
> challenged action might be considered sound trial strategy.

Id. at 689 (internal citations omitted).

The Court further explained that, to establish deficient performance, a petitioner must

identify acts that were "outside the wide range of professionally competent assistance." Id. To

satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at

694. The Sixth Circuit, applying the Strickland standard, has held that a reviewing court

therefore must focus on whether counsel's alleged errors "have undermined the reliability of and

confidence in the result." McQueen v. Scroggy, 99 F.3d 1302, 1311 (6th Cir. 1996), cert. denied

520 U.S. 1257 (1997).

### 1. Alleged failure to request proper jury instructions

First, Petitioner claims that his attorney was ineffective in failing to request proper jury

instructions. As discussed above, the Michigan Court of Appeals rejected all of Petitioner's

claims regarding jury instructions, holding that the instructions were appropriate and did not

misstate Michigan law. Therefore, Petitioner's trial attorney cannot be said to be ineffective for

failing to object to proper jury instructions.

### 2. Alleged failure to move to suppress statement on proper grounds

Petitioner claims that his attorney was ineffective in failing to move to suppress

Petitioner's statement to police on Fourth and Fifth Amendment grounds where it stemmed from

a warrantless felony arrest at Petitioner's home.  The Michigan Court of Appeals denied

Petitioner's claim as follows:

> [D]efense counsel did move to suppress defendant's statement on
> the ground that it was involuntary, and a Walker hearing was held
> regarding the issue before trial.  Furthermore, where the argument
> regarding the warrantless arrest was raised before, and rejected by,
> the trial court in a motion for new trial, defendant has not shown
> that the failure to raise the issue earlier constituted ineffective
> assistance of counsel.

People v. Orr, slip op. at 9.

The trial court record supports the Michigan Court of Appeals finding that trial counsel

did move to suppress the statement on the ground that it was involuntary.  Thus, the state court's

holding that trial counsel was not ineffective in this regard was not contrary to or an unreasonable

application of Supreme Court precedent.

In addition, the Michigan Court of Appeals' conclusion that Petitioner failed to show he

suffered prejudice from his trial counsel's failure to earlier present the issue of a warrantless

search where the trial court eventually did consider and reject the claim, was not contrary to or an

unreasonable application of Supreme Court precedent.

### 3. Cross-examination of Officer Fields

Petitioner claims that his trial counsel's cross-examination of Officer Fields was

ineffective in that trial counsel failed to seize upon an opportunity to impeach Officer Fields

25

during the Walker hearing. At the evidentiary hearing, Officer Fields testified that, after advising
Petitioner of his rights, she was then unable to take a statement from him because she was
interviewing other witnesses and then had to respond to a crime scene. Petitioner's trial attorney
argued that Officer Fields failed to take Petitioner's statement on that date because Petitioner
invoked his right to counsel. Petitioner claims that, contrary to Officer Fields' testimony that she
was busy with other interrogations, none of the other witnesses in this case were interviewed on
August 14, 1996. Thus, Petitioner argues, if his attorney had questioned Officer Fields regarding
this alleged inconsistency, her credibility would have been called into question.

        The Michigan Court of Appeals held that Officer Fields testimony was not necessarily
inconsistent with the timing of other witnesses' statements and, even if Officer Fields testimony
was inconsistent, Petitioner failed to show that he was prejudiced by the failure to cross-examine
her regarding the inconsistency. Petitioner has failed to show that the Michigan Court of Appeals
decision was contrary to or an unreasonable application of Supreme Court precedent.
Accordingly, he is not entitled to habeas corpus relief with respect to this claim.

### 4. Evidence that complainants were firing weapons

        Next, Petitioner claims that his attorney rendered ineffective assistance by failing to elicit
testimony that the complaining witnesses were also firing weapons. Petitioner argues that his
attorney should have impeached Police Officer McDonald's testimony that he found four shell
casings near the alley where the defendants were shooting with a document indicating that he
took shell casings from outside house number 19960 on Hawthorne Street, near where Sims had
been standing. The Michigan Court of Appeals held that, where Petitioner failed to show who
created the document, the accuracy of the document, or the exact location of the shell casings,

26

trial counsel's failure to use the document to support Petitioner's claim that Shelton and Sims were firing weapons was not improper nor did its omission impact the outcome of the trial. Petitioner has failed to show that the state court's determination was contrary to or an unreasonable application of Supreme Court precedent.  Therefore, Petitioner is not entitled to habeas corpus relief with respect to this claim.

### 5. Evidence of a third gun

Petitioner also alleges that his attorney was ineffective in failing to admit into evidence a shotgun seized from Sims' wife two weeks after the fatal shooting of Ms. Patton.  The Michigan Court of Appeals held that trial counsel was not ineffective on this ground, stating, in pertinent part:

> Defendant has not shown that the seized shotgun was tied to the shooting incident, or given any other reason to believe that the shotgun would have been admitted into evidence.  Accordingly, defendant has not demonstrated that he was denied the effective assistance of counsel.

People v. Orr, slip op. at 9.

Petitioner disagrees with the state court's determination that he failed to show that the shotgun was tied to the shooting incident or would have been admitted into evidence.  However, beyond simple disagreement with the state court's ruling, Petitioner provides no compelling support for his argument.  Accordingly, Petitioner has failed to establish that the Michigan Court of Appeals decision was contrary to or an unreasonable application of Supreme Court precedent.

### 6. Alleged victim's statement identifying gunman

Finally, Petitioner claims that his attorney was ineffective in failing to seek to admit evidence that Ms. Patton's last words were "Junior shot me."  The Michigan Court of Appeals

27

held that Petitioner failed to establish that he suffered any prejudice as a result of this omission, reasoning, in pertinent part:

> "Junior" was apparently the nickname of Stanley Cook. Thus, evidence that Junior shot Patton would have contradicted defendant Orr's testimony that defendant Grizzard was the other shooter. Furthermore, even assuming that Patton was referring to defendant Grizzard, the evidence was sufficient to convict defendant Orr as an aider and abettor of defendant Grizzard. In any event, there is no reasonable probability that the result of the proceeding would have been different had the statement been admitted into evidence.

People v. Orr, slip op. at 10.

Petitioner admitted that he went to Hawthorn Street armed with a gun and accompanied by an armed companion. Thus, as the state court found, sufficient evidence was presented to convict Petitioner as an aider of abettor. Confusion as to whether the victim identified Grizzard or Cook as her assailant, does not impact the evidence supporting Petitioner's conviction as an aider and abettor. Therefore, the state court's conclusion that Petitioner did not suffer any prejudice as a result of his attorney's failure to admit this evidence was not contrary to or an unreasonable application of Supreme Court precedent.

## G. **Cumulative Effect of Alleged Errors**

Finally, Petitioner claims that he is entitled to habeas corpus relief because the cumulative effect of the errors deprived him of a fair trial. Because this Court determines that the state court's determination that the majority of errors alleged by Petitioner were not errors and those errors that did occur were harmless was not contrary to or an unreasonable application of Supreme Court precedent, this claim is meritless.

## V. **Conclusion**

28

For the reasons stated above, the petition for a writ of habeas corpus is **DENIED** and the

matter is **DISMISSED**.

**SO ORDERED.**

AVERN COHN
UNITED STATES DISTRICT JUDGE

DATED:   **APR 3 0 2002**
Detroit, Michigan